UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

YVETTE J. HARRELL,

Case No

Plaintiff,

vs.

CITY OF OPA-LOCKA

Defendant.                                          JURY TRIAL DEMANDED

## COMPLAINT

This is an action by Plaintiff, Yvette Harrell, for discrimination due to her gender in violation and retaliation 42 U.S.C. §2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"); 42 U.S.C. §1981 ("§1981); the Florida Civil Rights Act of 1992 Section 760.01-760.11 ("FCRA"), Florida's Whistleblower Act, Fla. Stat. § 112.3187, and breach of contract, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to the Plaintiff, Yvette Harrell ("Ms. Harrell" or "Harrell"), who was adversely affected by such practices of the Defendant, City of Opa- Locka, ("City").

## JURISDICTION AND VENUE

1.      The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331 as this action arises under the Constitution or laws of the United States.  Jurisdiction also exists pursuant to 28 U.S.C. §1343 (a)(4) in that it seeks to recover damages or to secure equitable or other relief under actions of Congress, specifically 42 U.S.C. §1981 and 42 U.S.C. §2000e which provide causes of action for the protection of Constitutional and civil rights, injunctive remedies, damages and reasonable attorney's fees.  Plaintiff further invokes the jurisdiction of this Court pursuant to

28 USC §1332 as diversity exists between the parties.   Finally, the court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

2.       Venue is proper in this District pursuant to 28 U.S.C. §1391 because the DEFENDANTS conduct business in the Southern District of Florida, and further because a substantial part of the events giving rise to the Complaint occurred in the Southern District of Florida.

3.       This is an action for damages exceeding $75,000.00, exclusive of costs, interest and attorneys' fees.

**PARTIES**

4.       Yvette Harrell is a citizen of the United States and is a resident of Miami-Dade County, Florida.  At all times relevant herein, Harrell worked for the City.

5.       City of Opa-Locka is a municipal corporation established under the constitution of the State of Florida.

6.       At all times relevant, City has done business in Florida and has been an employer affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

**CONDITIONS PRECEDENT**

7.       More than 30 days prior to the institution of this lawsuit, Ms. Harrell filed a dual Charge of Discrimination with the EEOC and the Florida Civil Rights Commission alleging that the City violated Title VII.

8.       EEOC sent the Charge to the Department of Justice and the Department of Justice issued a Right to Sue letter on January 31, 2020.  Ms. Harrell received the certified letter on February 8, 2020. See Exhibit 1 and 2.

9.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF FACTS**

10.     Ms. Harrell is a female with over 15 years of experience as an attorney at law.

11.     Ms. Harrell was hired as the assistant City Manager from June 2015 to March 2016.

12.     Ms. Harrell was retained again as the assistant City Manager for the time period of March 2016 to April 2016, in where she worked as the acting interim and permanent City Manager from April 2016 to July 2017.

13.     Ms. Harrell became the City Manager in the midst of a financially chaotic and uncertain time which involved a State Oversight Board and which was accompanied investigations by several agencies, including one that included the arrest and conviction of high-level city officials.

14.     Faced with issues of the most significant magnitude (insolvency of the City was considered), Ms. Harrell took the position and using her business acumen and legal skills, went to work for the people of the City of Opa-locka.

15.     While working during her first tenure, under her administration, Ms. Harrell reduced spending in the City by hundreds of thousands of dollars, identified monies available to the City, terminated non-beneficial agreements and identified redundant personnel positions.

16.     In spite of the City's obvious progression under her administration, Commissioner Kelley would often state that because of Ms. Harrell's ineptitude, he desired to have the former *male* City Manager return.

17.     During this time, Commissioner Joseph Kelley would constantly undermine and minimize Ms. Harrell's efforts, blatantly disregard her authority as the City Manager, require staff to work directly with him in contradiction of her directives and belittle her in the public Commission meetings.

18.     At one point, after yet another maligning interaction with Commissioner Kelley, Ms. Harrell, advised the City in a written email that she would no longer tolerate the hostile work environment and discriminatory treatment of Commissioner Kelley.

19.     In spite of this illegal treatment, Ms. Harrell continued to try to work with Commissioner Kelley for the betterment of the City, to no avail.

20.     Finally after having accomplished her goal of stabilizing the City's finances to a point where insolvency was no longer a public discussion, she decided she would relieve herself of the discriminatory and unrelenting treatment of Commissioner Kelley.

21.     Having a heart for the people of Opa-locka and a desire to help "right" the decades of "wrongs" against them, Ms. Harrell returned to the City as City Manager to once again assist with the financial disclosures that were overdue to the State.

22.     Ms. Harrell was retained again to act as the City Manager from October 2018 to until December 12, 2018, when she was unlawfully terminated and defamed by Commissioner Kelley and his co-conspirators.

23.     Commissioner Kelley stated on various occasions immediately prior to and upon Ms. Harrell's return that he would not work with "that lady" because Ms. Harrell refused to recognize him as the "Senior Stateman" in the City.

24.     True to his word, Commissioner Kelley began to disparage and threaten to do "whatever [he] had to" to either prevent Ms. Harrell's return or make sure she was terminated.

25.     Prior to the Contract being presented to the City Commission for approval, it was discussed with and encouraged by the then head of the State Oversight Board which governed the City's expenditures, prior to being presented to the City Commission.

26.     In fact, when asked about the possibility of a contract for Ms. Harrell, the then head of the State Oversight Board stated, "of course.  No one would take that job without some assurances."

27.     In spite of Commissioner Kelley's efforts, he failed at preventing Ms. Harrell's re-employment with the City and the City Commission approved her return and her employment contract (the "Contract).

28.     Immediately upon her return to the City as Manager, Ms. Harrell began to work on the budget and other financial disclosures.

29.     Having an intimate knowledge of the pressure often placed on employees by outside influences, Ms. Harrell also began to meet with the employees to discuss any concerns they may have concerning the City's operation.

30.     In those initial meetings with employees, two employees on different occasions revealed that they were pressured to work for the personal benefit of one of the commissioners during City-work hours.

31.     Both employees, one of whom was a manager, advised Ms. Harrell that they felt that if they failed to perform as required, they would be terminated.

32.     Upon learning of yet another instance of unethical and potentially illegal activities in the City, Ms. Harrell forwarded communication to the City Commission and City Attorney advising of her concerns and requesting whistleblower protection under Florida's Whistleblower Act, Fla. Stat. § 112.3187.

33.     Ms. Harrell also reported what she had become aware of to the Miami-Dade County Ethics Commission ("Ethics") among others the correspondence forwarded to the City Commission included Ethics in the list of recipients.

34.     During another meeting with personnel, Ms. Harrell also became aware of an incident involving the wife of Commissioner Kelley and her attempt at interfering in a law enforcement investigation concerning her family member.

35.     Ms. Harrell was immediately retaliated against once the City received the email concerning the investigations that she was conducting.

36.     Specifically, the hostile work environment conditions as caused by Commissioner Kelley worsened.

37.     During this time, the City was preparing for an election for several seats on the Commission.

38.     Commissioner Kelley assured individuals in the City that he would work to get certain individuals elected and once elected he would *guarantee* that Ms. Harrell would be terminated shortly thereafter.

39.     The City did not respond to Ms. Harrell's investigation disclosure or her request for whistleblower protection.

40.     However, at least one of the then-seated elected officials individually informally inquired into Ms. Harrell's investigations and advised that they supported the investigation and elimination of any wrongdoings, especially as it related to City employees.

41.     As Ms. Harrell was investigating the incidents, she was cooperating with Ethics, and provided them with documents, names and other information she had uncovered.

42.     Throughout this time, Commissioner Kelley continued to disparage and belittle Ms. Harrell, refused to directly speak with her, publicly announced that he would see to it that the former *male* City manager would return and she would be terminated.

43.     During these investigations and Ms. Harrell's other administrative duties, Commissioner Kelley was multiple individuals that if "she" would meet with him "and reassure him" that she would treat him the way she treated the then-Mayor Myra Taylor, he would reconsider the item to terminate her.

44.     Although humiliated by having to address the individual who had constantly caused a hostile work environment and treated her with disdain and disregard simply because of her gender, Ms. Harrell agreed to meet with the Commissioner for what she believed to be the "good of the City."

45.     During that meeting, the Commissioner reiterated his role as the "Senior Stateman" and reprimanded Ms. Harrell for not seeking his direction before making decisions in the City, including the undergoing investigations.

46.     Ms. Harrell advised the Commissioner that she was aware of the disparaging comments he made about her (even giving direct examples) and that she was aware of the fact that he desired the return of the former city manager who was male.

47.     Commissioner Kelley never denied making any of the unprofessional and gender-based comments but did admit to wanting the return of the former city manager.

48.     Realizing that this meeting was likely simply another way the Commissioner sought to further express his dominance over her, Ms. Harrell advised him that she believed she had acted in conformance with her duty as City Manager and that she did not believe anything she could do would change how he felt about her.

49.     The meeting ended with formalities and with the Commissioner advising, he would "wait to see how she acted" before determining whether he would withdraw the item for her termination.

50.     Recognizing that she would likely be terminated, Ms. Harrell began to work with personnel even more diligently to ensure that the City's overdue financial disclosures as well as the environmental conditions that were impacting the health of the residents were being finalized and addressed.

51.     Within a little more than a month after being rehired, Ms. Harrell was able to present the City with a balanced budget that was passed and implemented and she also implemented corrective measures to mitigate the environmental health concerns of the City.  The proof of which was well-documented and available for review.

52.     Shortly after implementing a program to address the absurdly high water bills that residents were receiving in addition to reviving dormant negotiations with the law enforcement union, Commissioner Kelley conspired with some of the newly elected officials to terminate Ms. Harrell.

53.     At least one newly elected official was not able to be influenced and blatantly refused to accept or go along with the scheme to wrongfully terminate Ms. Harrell.

54.     In spite of the achievement realized under Ms. Harrell's administration in such a short time, the City Commission wrongfully terminated Ms. Harrell and refused to honor the Contract that had been in operation between the City and Ms. Harrell since her return to the City.

55.     Ms. Harrell stated repeatedly that she stood by the allegations made in in her Whistleblower complaint and that she was entitled to receive all benefits due to her under the terms of the agreed upon and Commission-approved Contract.

56.     The City ignored the known discriminatory treatment of Ms. Harrell, her request for Whistleblower protection as well as its obligations under her employment Contract and unlawfully terminated Ms. Harrell.

## COUNT I -VIOLATION OF 42 U.S.C. §1981
### (Disparate Treatment)

57.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

58.     At all times asserted herein, the PLAINTIFF was in a contractual relationship with DEFENDANT as a result of their employment relationship as defined within Section 1981 and as such, prohibited from discriminating on the basis of sex.

59.     The incidents alleged previously by the PLAINTIFF, establish that the DEFENDANT intentionally discriminated against her due to her sex, as she was subjected to disparate treatment compared to her male counterparts in regard to job classifications, compensation rates, training, the enforcement of DEFENDANT policies and procedures and other conduct which may become known throughout the course of discovery, in violation of Section 1981.

60.     The DEFENDANT'S conduct in treating the PLAINTIFF differently than her male counterparts was due, in whole or part, to her gender, which was a motivating factor or determinative factor for the disparate treatment, in violation of Section 1981.

61.     As depicted in the actions described above, the DEFENDANT'S conduct substantially impaired the enjoyment of the privileges and benefits of the PLAINTIFF'S employment contract in violation of Section 1981 of the Civil Rights Act of 1866.

62.     DEFENDANT'S purported reasons for the actions taken against PLAINTIFF are pretext for discrimination.

63.     As a direct and proximate result of DEFENDANT'S sex discrimination, the PLAINTIFF suffered lost earnings and benefits, impairment of earning capacity, benefits and/or retirement benefits, loss of reputation, professional and personal embarrassment, and other emotional distress, including anxiety, anguish, humiliation and other incidental and consequential damages and expenses and thus is entitled to monetary and compensatory relief.

64.     The conduct of DEFENDANT, as set forth above, was intentional, willful, malicious, oppressive, reckless and done in complete disregard of the PLAINTIFF'S rights thereby justifying an award of punitive damages from the DEFENDANT.

65.     As further direct and proximate result of the DEFENDANT'S violations of Section 1981, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall

be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded pursuant to Section 1981.

## COUNT II -VIOLATION OF TITLE VII-GENDER DISCRIMINATION
### (42 U.S.C. §2000E ET.SEQ.)

66.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

67.     At all relevant times, DEFENDANT conducted business and operated out of the Southern District of Florida, employing greater than 15 employees and thus was an "employer" as defined in Title VII, and as such prohibited from discriminating in employment on the basis of gender. See 42 U.S.C. §2000e.

68.     At all relevant times it was unlawful for DEFENDANT, as an employer, discriminate against any individual with respect to compensation, terms, conditions and privileges of employment, because of gender.  See 42 U.S.C. §2000e-2.

69.     At all relevant times, the PLAINTIFF was an employee within the meaning of Title VII, protected against discrimination in employment on the basis of her gender.  See 42 U.S.C. §2000e.

70.     Throughout her employment and up until her employment ended DEFENDANT, by and through agents, discriminated against PLAINTIFF on the basis of her gender as alleged previously herein.   As such, the PLAINTIFF'S gender was a determining factor in DEFENDANT'S employment decisions, including her compensation, terms and conditions of employment.

71.     Through the actions described above, the DEFENDANT knowingly and willfully discriminated against the PLAINTIFF on the basis of her gender, in violation of Title VII.

72.     DEFENDANT'S purported reasons for the actions taken against PLAINTIFF are pretext for discrimination.

73.     As a direct and proximate result of DEFENDANT'S gender discrimination, the PLAINTIFF suffered lost earnings and fringe benefits, loss of reputation, professional and personal embarrassment, and other emotional distress, including anxiety, anguish, humiliation and other incidental and consequential damages and expenses, and thus is entitled to monetary compensatory relief.

74.     The conduct of DEFENDANT, as set forth above, was intentional, willful, malicious, oppressive, reckless and done in complete disregard of the PLAINTIFF'S rights thereby justifying an award of punitive damages from the DEFENDANT.

75.     As further direct and proximate result of the DEFENDANT'S violations of Title VII, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded pursuant to Title VII.

## COUNT III-VIOLATION FLORIDA CIVIL RIGHTS ACT
### (GENDER DISCRIMINATION)

75.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

76.      At all relevant times, DEFENDANT'S conducted business and operated out of the Southern District of Florida, employing greater than 15 employees and thus was an "employer" as

12

defined in the Florida Civil Rights Act of 1992, ss. 760.02, and as such prohibited from discriminating in employment on the basis of gender.

77.     At all relevant times it was unlawful for DEFENDANT, as employers, to discriminate against any individual with respect to compensation, terms, conditions and privileges of employment, because of gender under the Florida Civil Rights Act.

78.     At all relevant times, the PLAINTIFF was an employee within the meaning of the Florida Civil Rights Act of 1992, protected against discrimination in employment on the basis of her gender.

79.     Throughout her employment and up until her employment ended DEFENDANT, by and through agents, discriminated against PLAINTIFF on the basis of her gender as alleged previously herein.   As such, the PLAINTIFF'S gender was a determining factor in DEFENDANT'S employment decisions, including her compensation, terms and conditions of employment and ultimate departure.

80.     Through the actions described above, the Defendant knowingly and willfully discriminated against the PLAINTIFF on the basis of her gender, in violation of the Florida Civil Rights Act of 1992.

81.     DEFENDANT'S purported reasons for the actions taken against PLAINTIFF are pretext for discrimination.

82.     As a direct and proximate result of DEFENDANT'S gender discrimination, the PLAINTIFF suffered lost earnings and benefits, impairment of earning capacity, loss of reputation, professional and personal embarrassment, and other emotional distress, including anxiety, anguish,

humiliation and other incidental and consequential damages and expenses, and thus is entitled to monetary and compensatory relief.

83.     The conduct of DEFENDANT, as set forth above, was intentional, willful, malicious, oppressive, reckless and done in complete disregard of the PLAINTIFF'S rights thereby justifying an award of liquidated and punitive damages from the DEFENDANT.

84.     As further direct and proximate result of the DEFENDANT'S violations of the Florida Civil Rights Act, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded pursuant to the Florida Civil Rights Act.

## COUNT IV-VIOLATION OF 42 U.S.C. §1981 (RETALIATION)

85.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

86.     At all times asserted herein, the PLAINTIFF was in a contractual relationship with DEFENDANT as a result of their employment relationship as defined within Section 1981 and as such, DEFENDANT was prohibited from discriminating against PLAINTIFF on the basis of her race.

87.     The incidents alleged previously by the PLAINTIFF, establish that the DEFENDANT intentionally discriminated against her due to her sex, or that she reasonably perceived the DEFENDANT'S conduct as sexual discriminatory.

88.     The PLAINTIFF complained of and opposed sexual discrimination during the contractual employment relationship with the DEFENDANT specifically, by complaining that she was enduring a hostile work environment by opposing the differential enforcement of policies between herself and male counterparts.

89.     As a result of opposing sexual discrimination, the PLAINTIFF enjoyed the protections afforded under 42 U.S.C. §1981 against retaliation in employment.

90.     The aforesaid actions created a hostile working environment ultimately causing the PLAINTIFF emotional stress, anxiety, embarrassment and defamation.

91.     A causal connection exists between the PLAINTIFF'S protected activities as described above and the aforementioned conduct.

92.     The aforementioned acts of retaliation occurred during PLAINTIFF'S tenure of employment with DEFENDANT and after she opposed gender discrimination.

93.     The aforementioned acts of the DEFENDANT pervaded the workplace and resulted in fear of, and actual adverse actions against the PLAINTIFF.

94.     The aforementioned acts of the DEFENDANT were intentional, mean spirited, done with malice and ill will and consistent with the mindset that discriminatory behavior was acceptable, and that any such complaints were to be responded to by an unrelenting barrage of retaliatory conduct including but not limited to isolation, demeaning work-assignments and comments, decreased compensation, and false accusations of impropriety.

95.     As a direct and proximate result of the DEFENDANT'S actions as described above, the PLAINTIFF has suffered compensatory damages including, back pay, front pay, loss of income

and benefits, pension and/or retirement benefits, impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses.

96.     The DEFENDANT'S actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to the PLAINTIFF, entitling her to punitive damages under 42 U.S.C. §1981.

97.     As further direct and proximate result of the DEFENDANT'S violations of Section 1981, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded.

**COUNT V- VIOLATION OF TITLE VII- RETALIATION**
**(42 U.S.C. §2000E ET.SEQ.)**

98.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

99.     At all times mentioned herein, PLAINTIFF was an employee within the meaning of Title VII protected against retaliation due to her opposition to and complaints about gender discrimination.

100.    The incidents alleged previously by the PLAINTIFF, establish that the DEFENDANT intentionally discriminated against her due to her gender, or that she reasonably perceived the DEFENDANT'S conduct as discriminatory.

101.    The PLAINTIFF complained of and opposed gender discrimination during her tenure, specifically, by complaining that she was enduring a hostile work environment by opposing the differential enforcement of policies between herself and male employees.

102.    The PLAINTIFF'S actions in opposing gender discrimination and complaining about such conduct were protected activities under Title VII.

103.    The DEFENDANT subjected PLAINTIFF to materially adverse employment actions after she engaged in the aforesaid protected activities.  Such as reducing her voice as the City Manager in public meetings.

104.    A causal connection exists between the PLAINTIFF'S protected activities as described above and the aforementioned conduct.

105.    PLAINTIFF was treated less favorably than non-complaining co-workers, disciplined and ultimately terminated by the DEFENDANT in violation of the anti-retaliation provisions of Title VII for opposing and complaining about gender discrimination she was being subjected to by her male colleagues; and further for questioning the DEFENDANT'S failure to properly investigate her complaints.

106.    The aforementioned acts of retaliation occurred during PLAINTIFF'S tenure of employment with DEFENDANT and after she opposed gender discrimination.

107.    The aforementioned acts of the DEFENDANT pervaded the workplace and resulted in fear of, and actual adverse actions against the PLAINTIFF.

108.    The aforementioned acts of the DEFENDANT were intentional, mean spirited, done with malice and ill will and consistent with the mindset that discriminatory behavior was acceptable,

and that any such complaints were to be responded to by an unrelenting barrage of retaliatory conduct including but not limited to isolation, demeaning work-assignments and comments, decreased compensation, and false accusations of impropriety.

109.     As a direct and proximate result of the DEFENDANT'S actions as described above, the PLAINTIFF has suffered compensatory damages including, back pay, front pay, loss of income and benefits, pension and/or retirement benefits, impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses.

110.     As further direct and proximate result of the DEFENDANT'S violations of Title VII, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded pursuant to Title VII.

## COUNT VI- FLORIDA CIVIL RIGHTS ACT
## (RETALIATION)

111.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

112.     At all times mentioned herein, PLAINTIFF was an employee within the meaning of the Florida Civil Rights Act protected against retaliation due to her opposition to and complaints about gender discrimination.

113.    The incidents alleged previously by the PLAINTIFF, establish that the DEFENDANT intentionally discriminated against her due to her gender, or that she reasonably perceived the DEFENDANT'S conduct as discriminatory.

114.    The PLAINTIFF complained of and opposed gender discrimination during her tenure, specifically, by complaining that she was enduring a hostile work environment by opposing the differential enforcement of policies between herself and male employees.

115.    The PLAINTIFF'S actions in opposing gender discrimination and complaining about such conduct were protected activities under the Florida Civil Rights Act.

116.    The DEFENDANT subjected PLAINTIFF to materially adverse employment actions after she engaged in the aforesaid protected activities.     The actions include engaging in conduct intended to isolate her from colleagues; initiating investigations into her conduct, stripping her of supervisory and other actions intended to negatively impact the PLAINTIFF'S ability to perform her duties.

117.    A causal connection exists between the PLAINTIFF'S protected activities as described above and the aforementioned conduct.

118.    PLAINTIFF was treated less favorably than non-complaining co-workers, disciplined and ultimately terminated by the DEFENDANTS in violation of the anti-retaliation provisions of the Florida Civil Rights Act for opposing and complaining about the gender discrimination she was being subjected to by her male colleagues; and further for questioning the DEFENDANT'S failure to properly investigate her complaints.

119.    The aforementioned acts of retaliation occurred during PLAINTIFFS tenure of employment with DEFENDANT and after she opposed gender discrimination.

120.     The aforementioned acts of the DEFENDANT pervaded the workplace and resulted in fear of, and actual adverse actions against the PLAINTIFF.

121.     The aforementioned acts of the DEFENDANTS were intentional, mean spirited, done with malice and ill will and consistent with the mindset that discriminatory behavior was acceptable, and that any such complaints were to be responded to by an unrelenting barrage of retaliatory conduct including but not limited to isolation, demeaning work-assignments and comments, decreased compensation, and false accusations of impropriety.

122.     As a direct and proximate result of the DEFENDANT'S actions as described above, the PLAINTIFF has suffered compensatory damages including, back pay, front pay, loss of income and benefits, pension and/or retirement benefits, impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses.

123.     As further direct and proximate result of the DEFENDANT'S violations of  the Florida Civil Rights Act, as heretofore described, the PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the laws of this State prohibiting such discrimination, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to the PLAINTIFF, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. As such, PLAINTIFF requests that attorneys' fees be awarded pursuant to the Florida Civil Rights Act.

### COUNT VII-Violation of Florida's Whistleblower Statute
### Fla. Stat. § 112.3187

124.     PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

125.     At all relevant times, DEFENDANT conducted business and operated out of Miami-Dade County, Florida, was and is an "Agency" as defined under Fla. Stat. Ch. 112.3187(3)(a) and was the employer of PLAINTIFF.

126.     All conditions precedent to the bringing of this action including compliance with Fla. State. Ch.112.3187(8), have occurred, or have been attempted by the PLANITIFF, to no avail due to DEFENDANT'S refusal to investigate her timely submitted complaints; or alternatively, there are no conditions precedent required of the PLANTIFF to exhaust administratively prior to bringing the subject complaint.

127.     DEFENDANT is responsible for all acts committed by its officers, agents and employees within the scope of their employment, including the board of City commissioners.

128.     As a direct and proximate result of DEFENDANT's unlawful retaliatory action, PLANTIFF was terminated and thus denied the opportunities attendant to same including the ability to earn income, pay increases, fringe benefits and promotional opportunities as associated and provided through employment with the DEFENDANT.    Further, as a result of DEFENDANT'S unlawful practices,   PLAINTIFF will continue to lose substantial income including, but not limited to, wages, commissions and fringe benefits, loss of potential for promotion within her  career track, damage to her personal and professional reputations, loss of self-esteem, loss of sense of personal and professional security, as such PLAINTIFF requests an award of back and front pay as determined by the proofs.

129.    As a direct and proximate result of DEFENDANT'S willful, knowing and intentional conduct, the PLAINTIFF has suffered and will continue to suffer emotional mental anguish and distress, outrage and anxiety about his future and ability to support herself, harm to her employability and earning capacity; embarrassment among friend, and colleagues; undermining of self-esteem and motivation, disruption of his personal life and loss of enjoyment of the ordinary pleasures of everyday life, as such she is entitled to general and compensatory damages in an amount to be proven at trial.

130.    As a further direct and proximate result of DEFENDANT'S violations of Fla. Stat. Ch. §112.3187, et. Seq., PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the law of this State prohibiting such conduct, and hence forced to incur legal fees and costs, in an amount to be proven at trial.

### COUNT VIII-Breach of Contract

131.    PLAINTIFF adopts and re-alleges each and every allegation as set forth in Paragraphs ten (10) to fifty-six (56) above as thought fully rewritten herein.

132.    The is an action for breach of an agreed upon contract for employment as the City Manager for the City of Opa-Locka and the Plaintiff.

133.    Both parties agreed to the terms of the contract and the agreement was unanimously approved and voted on by the City Commission during a public meeting.1

134.    Defendant beached the agreement and failed to pay the Plaintiff all monies and benefits due under the agreement since December 12, 2018.

---

1 Defendant never gave finalized agreement to Plaintiff but operated under the agreement until the unlawful termination of Plaintiff.

135.   Defendant remains liable for all monies and benefits due and owing to the Plaintiff.

136.   Plaintiff has suffered damages as result of the Defendant's breach of the approved agreement in a presently indeterminable amount.

137.   All conditions precedent necessary of the institution of the claim has been complied with by the Plaintiff and the same has been waived or excused by the Defendant.

138.   Plaintiff has incurred costs and has retained the undersigned attorney to bring this action and is obligated to pay said attorney a reasonable fee for its services.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, Yvette Harrell, seeks judgment against DEFENDANTS, and respectfully requests the entry of a Judgment as follows:

(a)   Declare and adjudge that DEFENDANT has violated the PLAINTIFF'S rights under 42 U.S.C. §1981 et. seq., 42 U.S.C. §2000e, et. seq. (Title VII), and Fla. Stat. Ch. 760, et. seq. (Florida Civil Rights Act of 1992);

(b)   Award compensatory and punitive damages to the PLAINTIFF against DEFENDANT to the full extent allowed under 42 U.S.C.§1981, Title VII and the Florida Civil Rights Act of 1992, in amount(s) to be determined at trial;

(c)   Award monetary, general, equitable and/or special damages to the PLAINTIFF under 42 U.S.C. §1981 et. seq., 42 U.S.C. §2000e, et. seq., and Fla. Stat. Ch. 760, et. seq., including but not limited to back pay [wages, salary, fringe benefits and pre-judgment interest], front pay, and medical and retirement benefits, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by the PLAINTIFF, to be determined at trial;

(d)   Award PLAINTIFF the costs and expenses incurred in this action, including reasonable attorneys' fees and other litigation expenses as provided by 42 U.S.C. §1981 et. seq., 42 U.S.C. §2000e, et. seq., and Fla. Stat. Ch. 760, et. seq.;

(e)   Award statutory interest to the full extent provided 42 U.S.C. §1981 et. seq., 42 U.S.C. §2000e, et. seq., and Fla. Stat. Ch. 760, et. seq.;

(f)    Award PLANTIFF compensatory and punitive damages against DEFENDANT to the full extent allowed under Fla. Stat. § 112.3187;

(g)    Award damages for Breach of Contract and,

(h)    Award the PLAINTIFF any such additional relief as this Court deems just and proper.

**JURY DEMAND**

PLAINTIFF, Yvette Harrell, hereby requests a trial by jury on all issues.

Dated:  May 7, 2020.

Respectfully Submitted,

/S/Arnold S. Gaines
Arnold S. Gaines, Esq. [FBN 670928]
Law Offices of Gaines & Nolan
2100 SE Hillmoor Drive, Suite 106
Port St. Lucie, Florida 34952
asg@gainesnolan.com
772-200-4600 office
772-200-4575 fax
Counsel for Plaintiff